PHILADELPHIA MORTGAGE & TRUST COMPANY, APPELLANT,
v. CITY OF OMAHA ET AL., APPELLEES.[*]

FILED DECEMBER 18, 1901. No. 10,735.

1. **Taxes on Real Estate:** PERSONAL LIABILITY: CHARGE AGAINST PROPERTY. Taxes levied on real estate for general revenue purposes or by way of special assessment for benefits received on account of local improvement, are not a debt, in the ordinary meaning of the word, against the owner of the property, to be enforced as a personal liability, but a charge upon the real estate against which assessed, to be enforced and collected by a sale of the property liable for the taxes so levied and assessed.

2. **Injunction to Restrain the Collection of Taxes.** By reason of the provision of section 144, article 1, chapter 77, Compiled Statutes, an injunction will not be granted to restrain the collection of taxes, unless the assessment is void or levied for an illegal or unauthorized purpose.

3. **Estoppel in Pais:** MUNICIPAL OFFICERS: INJUNCTION. Ordinarily the rule of estoppel *in pais* will not be held applicable to the acts of municipal officers in the exercise of governmental agencies of the municipality of which they are public agents, and where a city treasurer erroneously and by mistake marked on the tax records of his office that certain taxes levied on real estate were "paid," and a third party, relying on and in faith of the record so erroneously made, loaned money and acquired title to the land, believing the taxes assessed thereon were paid, *held,* that the rule of equitable estoppel did not apply as against the municipality, and that it could not by injunction be restrained from enforcing the collection of the taxes actually due and unpaid, which had been lawfully levied and assessed on such property.

APPEAL from the district court for Douglas county. Heard below before FAWCETT, J. *Affirmed.*

*Wharton & Baird,* for appellant.

*E. H. Scott, contra.*

HOLCOMB, J.

Plaintiff and appellant instituted this action in the court below in the exercise of its equity jurisdiction, for the pur-

[*]Rehearing allowed. Reaffirmed.

pose of having the title to certain real estate quieted in it and to compel the defendant city treasurer of Omaha to note on his records the payment of certain taxes appearing against said real estate as being unpaid and an apparent lien thereon, and also to enjoin the defendant treasurer from changing the records after they were made to show and record the fact that the said taxes were paid. The relief sought was based substantially on the following facts which were pleaded in the petition, and the truth of which sufficiently appears from the entire record before us: At the time of the transaction hereinafter narrated one Henry Bolln was city treasurer, and had applied to the plaintiff for a loan of money on the real estate involved in this action, of which he was the owner. The loan was negotiated on the faith of the security offered, and, default having been made in the payment of the loan so made and the interest according to the terms of the agreement, such proceedings were thereafter had as resulted in a sale of the mortgaged property, and the purchase of the same by the plaintiff in satisfaction of its mortgage lien thereon, so that it became the owner of the property in fee simple. At the time the loan was negotiated the taxes for municipal purposes assessed and levied on the real estate offered for security for the years 1892 and 1893, and certain instalments of special paving taxes, in all amounting to $258.62, were marked "Paid" on the tax records of the city. The plaintiff negotiated the loan and advanced the money to the borrower, relying on the correctness of the tax-records as they thus appeared. The taxes were in truth and fact never paid; and subsequent to the transaction resulting in the loan and prior to the bringing of the present action, the records were altered by the erasure of the word "Paid," so that the taxes again appeared as unpaid, and an apparent lien on the property against which assessed and levied. On these facts the trial court found the plaintiff's bill was without equity, that it was not entitled to the relief sought, and dismissed the action. From the degree of dismissal the cause is brought to this court by appeal.

It is agreed by all the parties interested, as we understand the record, that the entry on the tax-records showing payment of the taxes was a mistake, and that the taxes so recorded as being paid were never in fact paid into the city treasury, and that the records ought not to have been so marked. At all events, there is no shadow of claim put forth by appellant to the effect that the taxes have ever been paid. The law provides that whenever taxes are paid the treasurer shall write on the tax lists, opposite the description of the real estate or personal property whereon the same were levied, the word "Paid," together with the date of such payment, and the name of the person paying the same. Compiled Statutes, 1901, ch. 77, art. 1, sec. 108. And it is the contention of appellant that the law presumes that a public officer does his duty, and, the record showing the taxes to have been paid, it will be presumed the entry of payment was rightly made, and that, in any event, the city is estopped from enforcing the taxes so marked "Paid," as against the land on which levied, and afterward purchased by plaintiff, because of its having made the loan mentioned and parted with its money relying on and in faith of the record as it then appeared, showing all of the taxes mentioned to have been paid. The problem thus presented is an interesting one, and, were the transactions such as to affect only private individuals, or corporations acting in their corporate capacity as an individual, we would not regard it as difficult of solution. We are, however, constrained to the view that because of the nature and quality of the act relied on to operate as an estoppel, and a proper application of the statutes relating to the public revenues and the manner of their collection, an altogether different question is presented from that first suggested. The plaintiff asks, in effect, that the tax-records be changed from their present condition so as to show all of the taxes mentioned in the petition to have been paid; that it be decreed that such taxes are not a lien on the real estate against which they were assessed; and that the defendant city and its treasurer be forever restrained from enforcing or at-

tempting to enforce the collection of such taxes as against the real estate, the title to which, free from any lien by reason of such taxes, it is sought to have quieted in the plaintiff. The relief demanded is shocking to a court whose conscience is appealed to, since it is obvious that the record thus made under compulsion would be a false one, and deprive the city of the collection of some of its revenues to which it is lawfully entitled. Let us see what the effect of a decree of the kind prayed for would be. The special assessments and the taxes assessed and levied for municipal general revenue purposes are a charge upon and against the particular tracts of land on which assessed, and, unless the real estate can be made to respond to the charges thus made, the taxes can not be collected, although lawfully levied and justly due, and the city must lose all right thereto. It is suggested in brief of counsel for appellant that the collection of these taxes may be enforced against Bolln, the owner of the real estate at the time they were levied. But this can not be, under the laws of this state. It will hardly be contended by any, we assume, that a special assessment levied solely on the ground of benefits to the property assessed, and on the theory that for the benefits received because of local improvements, special assessments to correspond to the benefits received may rightfully be made a charge against the property, can be converted into a just and legal demand *in personam* against the owner of the fee. The law authorizes the taxation of property specially benefited by reason of local improvements, but not the taxation of the owner of such property. On taxes levied on real estate for general revenue purposes this court has more than once held that the tax was not a debt, in the ordinary meaning of the word, against the owner of the property, to be enforced as a personal liability, but is a charge upon the real estate against which assessed, to be enforced and collected by a sale of the property liable for the taxes so levied and assessed. *Grant v. Bartholomew,* 57 Nebr., 673; *Carman v. Harris,* 61 Nebr., 635.

If our conclusions in respect of the matter last discussed

are correct, then it must follow that the ultimate object and purpose to be accomplished by these proceedings are permanently to restrain the collection of the taxes assessed against the property involved in the controversy, although it is conceded that the taxes are in all respects valid, and legally due to the municipality to which they are owing. By section 144, article 1, chapter 77, of the Compiled Statutes, 1901, it is provided that no injunction shall be granted by any court or judge in this state to restrain the collection of any tax, or any part thereof, except the tax enjoined be levied or assessed for an illegal or an unauthorized purpose. These provisions are to be given the effect the language used, expressive of the legislative intent, fairly warrants; and the uniform holdings of this court have been that unless the assessment is void, or levied for an illegal or unauthorized purpose, injunction can not be resorted to in order to prevent the enforcement of the collection of such taxes. *South Platte Land Co. v. City of Crete,* 11 Nebr., 344; *Wilson v. Auburn,* 27 Nebr., 435; *Thatcher v. Adams County,* 19 Nebr., 485; *Spargur v. Romine,* 38 Nebr., 736; *Bellevue Improvement Co. v. Village of Bellevue,* 39 Nebr., 876, 885; *Chicago, B. & Q. R. Co. v. Cass County,* 51 Nebr., 369. In *Bellevue Improvement Co. v. Village of Bellevue, supra,* it is stated in the opinion of the court: "In many states courts of equity interfere to restrain the enforcement of invalid taxes upon real estate upon the ground that they cast a cloud upon plaintiff's title, but an inspection of the decisions of this court shows that this principle has not been here recognized. This feature has existed in each of the cases where relief has been refused upon the general ground that no established rule of equity jurisprudence has been invoked to sustain the suit." The case at bar does not commend itself as coming within any established equitable principle justifying the relief asked, unless it be on the ground of estoppel, which will be noticed hereafter. Counsel for appellant insists that it is not sought to enjoin the collection of the taxes assessed against the property which it is desired to

have released from the lien thereof, but only to have the apparent lien removed, and that the city is yet at liberty to proceed and collect the taxes in any manner it may adopt, except by proceedings against the real property on which assessed. It is obvious, from an inspection of the revenue laws and the decisions heretofore cited, that the assessments must be collected, if at all, from the property alone liable therefor, and that a suit against the person owning the land at the time of the assessment is unauthorized. It then appears that as to the equities in the case in favor of or against the respective parties, the question is whether the municipality shall lose the taxes lawfully assessed against the property described in the plaintiff's petition, or be permitted to enforce the collection of the amount due notwithstanding the error made by one of its officers or agents, and leave the plaintiff to his remedy against those responsible for the mistake which led the plaintiff to take the action it did. The plaintiff answers the question by saying that the doctrine of estoppel *in pais* applies, and the city, because of the erroneous action of one of its agents, on the faith of which plaintiff acted, is prohibited from asserting or enforcing any lien it may have had for the payment of such taxes. Counsel for appellant, in their brief, say: "A municipal corporation may be estopped by the action of its proper officers when acting in its private as contradistinguished from its governmental capacity and has lawful power to do the act." Conceding the proposition thus enunciated to be correct, can it be said that the act of the city treasurer in erroneously noting on the tax records of a municipality that certain taxes were paid, when, as a matter of fact, they were not, is the act of the corporation in its private or individual capacity and not one pertaining to the government of its affairs? It is frequently said that a municipality has a double character—one governmental, legislative or public; and the other, proprietary or private. Dillon, Municipal Corporations [4th ed.], sec. 66. The authority to assess property, collect taxes, and make disbursements thereof is founded solely and exclusively on the theory that

it is essentially a part of the machinery of government, necessary to maintain its existence for the benefit of the public; and it would seem to follow as a natural deduction that the agencies employed in respect of such matters, including the agency authorized to collect the taxes levied for public purposes, is an exercise of powers of a public or governmental character. If correct in the statement just made, then it follows, according to the rule advanced by plaintiff, that the action taken by one of the public officers of the corporation, which is relied on to operate as an estoppel, was not an act of the corporation in its private or proprietary character, and hence the doctrine invoked is not applicable. The reasons for the distinction have been recognized and applied by this court in an action wherein it was sought to establish the liability of a city for the negligent acts of one of its servants and employees, committed while in the performance of his duties as an agent or servant of the municipality. *Gillespie v. City of Lincoln*, 35 Nebr., 34. It is there held, in substance, that the exception to the general rule as to liability is based upon a public policy which subordinates private interests only to the welfare of the public generally, and we apprehend that this is the underlying and distinguishing principle as to the law of estoppel when it is invoked against a city for the erroneous acts of one of its officers engaged in the management of some branch of the governmental affairs of the municipality. For reasons as potent as those relieving a city from liability because of the negligent acts of its officers, it would seem estoppel can not be predicated on or arise from acts of negligence or mistake by an agent of the corporation while in the discharge of the governmental affairs of the municipality. If the rule can be invoked by reason of such errors or mistakes, then, indeed, would the public welfare be seriously menaced, and the ability of the corporation to perform its public functions in many instances dangerously crippled. The correct rule, therefore, is, and should be, that the doctrine can be appealed to effectively, as against a municipal corporation, only when it is acting

in its private as contradistinguished from its public or governmental capacity. There may be and probably are exceptions to the rule stated, as when a municipality has gained a clear and decided advantage by the act relied on to operate as an estoppel, when equity will prevent it from retaining the advantage, and at the same time deny its binding force. In the present case, it is to be borne in mind, nothing of advantage has been gained by the city by the erroneous and mistaken action of its city treasurer, and that the success of the plaintiff can result only in a corresponding loss to the city.

The authorities are, we think, quite uniform in support of the proposition that the doctrine can not ordinarily be invoked to defeat a municipality in the prosecution of its public affairs because of an error or mistake of one of its agents or officers which has been relied upon by a third party to his detriment. In the case of *People v. Brown,* 67 Ill., 435, it is stated in the head-notes: "Public policy, to prevent loss to the state through the negligence of public officers, forbids the application of the doctrine of estoppel to the state, growing out of the conduct and representations of its officers. On the same ground that the government is excused from the consequence of laches, it should not be affected by the negligence or even willfulness of any one of its officers." Says Mr. Justice Breese, who delivered the opinion of the court: "It is a familiar doctrine, that the state is not embraced within the statute of limitations, unless specially named, and, by analogy, would not fall within the doctrine of estoppel. Its rights, revenues and property would be at fearful hazard, should this doctrine be applicable to a state. A great and overshadowing public policy of preserving these rights, revenues and property from injury and loss by the negligence of public officers, forbids the application of the doctrine. If it can be applied in this case, where a comparatively small amount is involved, it must be applied where millions are involved, thus threatening the very existence of the government. The doctrine is well settled that no laches can be imputed to the government, and

by the same reasoning which excuses it from laches, and on the same grounds, it should not be affected by the negligence or even wilfulness of any one of its officials." In *City of Chicago v. Sexton,* 115 Ill., 230, upon the subject of estoppel as to a municipal corporation, the rule is stated in the opinion as follows:. "We hold, simply, that a municipal corporation may be estopped by the action of its proper officers, when the corporation is acting in its private, as contradistinguished from its governmental, capacity, and has lawful power to do the act." See, also, authorities bearing generally on the proposition: *Martel v. City of East St. Louis,* 94 Ill., 67; *Axt v. Jackson School,* 90 Ind., 101; *Berry v. Bickford,* 63 N. H., 328; *Sievers v. City of San Francisco,* 115 Cal., 648. A case somewhat related to the one at bar is reported in 23 N. J. Eq., 84 (*Kuhl v. Mayor*), wherein a party purchased land relying on the fact of payment of the taxes levied on the same, to evidence which the proper officer had issued a receipt for the taxes, which it appeared afterward had not been actually paid; and, on an application for an injunction, it was held that the doctrine of estoppel did not apply and the injunction was therefore denied. While the reasoning employed does not commend itself to us, the result reached is in harmony with the general trend of authority. Counsel for appellant cite us some authorities holding that by an injunction a municipality will be restrained from enforcing tax liens on the ground of estoppel, but in each of the two cases cited the sole question considered was that of enforcement of the lien, and not the collection of the taxes, as must be the result in the case at bar if the relief prayed for is granted. The equities of the appellant in the present case are not such as to entitle it to an injunction restraining the collection of the taxes lawfully assessed against the property it now owns, nor can the doctrine of estoppel *in pais* be successfully invoked to accomplish that result.

It follows that the decree of the district court should be affirmed, which is accordingly done.

AFFIRMED.